**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ECOR Solutions, Inc. f/k/a ERM C&O**
**Services, Inc.,**

                                        **Plaintiff,**            **1:02-CV-01103**
                                                                  **(NAM/DRH)**
**v.**


**Malcolm Pirnie, Inc. and David R. Hiss,**

                                        **Defendants.**


_____

APPEARANCES:                                         OF COUNSEL:

Ernstrom & Dreste, LLP                               John W. Dreste, Esq.
_Counsel for Plaintiff_
180 Canal View Boulevard
Suite 600
Rochester, New York 14623

Sugarman Law Firm, LLP                               George De More, Esq.
_Counsel for Defendants_
360 South Warren Street
Syracuse, New York 13202

NORMAN A. MORDUE, D. J.:

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

        Plaintiff ECOR Solutions, Inc. commenced a law suit against defendants, Malcolm

Pirnie, Inc. and David R. Hiss, asserting causes of action for (1) negligent

misrepresentation/malpractice, (2) tortious interference with contract, and (3) prima facie tort.

Presently before the Court is defendants' motion to dismiss plaintiff's complaint pursuant to

*Fed.R.Civ.P. (12)(b)(6)* for failure to state a cause of action upon which relief can be granted. Alternatively, defendants seek summary judgment pursuant to *Fed.R.Civ.P. 56*. Plaintiff opposes both the motion to dismiss and the motion for summary judgment. Plaintiff also cross-moves for a partial summary judgment asking this Court to conclude that relationship equivalent to that of privity exists between the parties in the present case. Furthermore, plaintiff asks the Court for a leave to amend its complaint as to substantiate its prima facie tort claim, update its currently known damages, and to add a new cause of action against the defendants based on subrogation principles. Defendants have not objected to plaintiff's request to amend.

## II.    FACTUAL BACKGROUND

In the late 1980's and early 1990's the New York State Department of Environmental Conservation ("DEC") initiated a study and an investigation of the American Valve Manufacturing site located in Green County, New York. The New York State Superfund program had identified this site as containing various hazardous substances.  In 1992, DEC hired defendants in the capacity of design consultants and construction managers for the remediation of the site. Pursuant to its contract with DEC, defendants conducted remedial investigation and feasibility studies and prepared reports of their findings. Defendants also prepared plans and specifications which were to be utilized in the remediation of the site.

The project was advertised for bid in late September, 2000, with bids to be submitted no later than October 17, 2000. Among other things, the project required the successful bidder to engage in consolidation of the contaminated foundry sand in a designated capped landfill, asbestos abatement, building demolition, excavation and treatment of soils contaminated with

volatile organic compounds ("VOC") using a low temperature thermal desorption ("LTTD")

process, removal of abandoned utilities, treatment of underground water, and the installation of

monitoring wells.

Prior to submitting its bid, plaintiff had been provided with contractual documents

prepared by defendants for purposes of assisting plaintiff in formulating its bid.  Plaintiff also

received boring logs and related subsurface information obtained by defendants as part of their

investigation of the site.  As a prerequisite to the bidding process, plaintiff was required to

attend a mandatory pre-bid conference, which took place on September 27, 2000.  According to

defendants' records, approximately 58 contractors ordered the bidding documents and over 40

contractors, including plaintiff, attended the pre-bid meeting.  On October 4, 2000, plaintiff,

along with ten other potential bidders, attended a second meeting and a site inspection.

Defendants participated in both pre-bid meetings and prepared the minutes of the meetings and

of the site inspections.  Subsequently, defendants conveyed these materials directly to plaintiff

as part of Addendum  No. 1 and Addendum No. 2, which eventually became a part of the

contract documents.

On October 17, 2000, plaintiff submitted its bid for the project in the amount of

$3,497,942.07.  Defendants tabulated and reviewed eleven bids submitted by the various

contractors for the project.  Based upon its analysis of plaintiff's bid, defendants recommended

that plaintiff be awarded the project contract.

DEC notified plaintiff of the bid's acceptance by notice of award dated November 2,

2000.  On January 9, 2001, the state comptroller approved the contract between the DEC and

plaintiff and subsequently issued a notice to proceed.  Accordingly, in February of 2001,

plaintiff commenced work on the project.  Pursuant to the contract, plaintiff was responsible for performing all of the work in accordance with the plans and specifications prepared by defendants.  Defendants were, in turn, responsible for supervising and managing the project.

Throughout the project, numerous differences between the actual site conditions and those set forth in the bidding documents were discovered, including the discovery of contaminated foundry sand beneath the contract pad under one of the buildings to be demolished, elevated moisture content in the contaminated soils, and larger quantities of VOC contaminated soils.   Plaintiff alleges that these differences increased plaintiff's costs on the project and caused time delays, requiring an extension of the designated completion deadline. According to plaintiff, DEC rebuffed its requests for additional compensation and for an extension of the completion date.  Instead, DEC terminated plaintiff's contract allegedly for cause, effective April 10, 2002.

On May 24, 2002, plaintiff submitted a number of change order requests.  These documents requested an additional payment in the amount of $ 2,221,233.61 for unanticipated site conditions and extra work allegedly caused thereby.  DEC is currently reviewing the change order requests and defendants have been asked by DEC to evaluate certain components of these change order requests.

On August 26, 2002, plaintiff filed a notice of claim against DEC and the State of New York in the Court of Claims.  The claim asserts the following six separately denominated causes of action: (1) wrongful termination; (2) breach of contract; (3) equitable payment upon termination; (4) rescission and/or reformation of contract; (5) extension of time; and (6) interest.

The claim seeks damages in the amount of $7,095,008.08 plus interest and is still pending with the Court of Claims.

**III.    DISCUSSION**

**A.    Standards of Review**

On a motion to dismiss pursuant to *Fed.R.Civ.P 12(b)(6)*, the court must accept as true all factual allegations in the complaint, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in plaintiff's favor. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45- 46 (1957).  It is well-settled that the court may not look to evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2nd Cir. 1991) ("[i]n considering a motion to dismiss for failure to state a claim under *Fed.R.Civ.P. 12(b)(6)*, a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").  Thus, while the parties have submitted evidence in connection with their summary judgment papers, the Court has considered only the allegations in plaintiff's complaint in considering defendants' motion to dismiss.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Fed. R. Civ. P. 56(c)*.  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986).

Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See Fed. R. Civ. P. 56(e).* It is with these considerations in mind that the Court addresses respective motions of the parties.

### B.      Tortious Interference With Contract Claim

To adequately assert a cause of action for tortious interference with contract plaintiff must allege in his complaint that (1) a valid contract exists between plaintiff and a third party; (2) defendant had knowledge of the contract; (3) defendant intentionally procured the breach of the contract; and (4) the breach resulted in damages to plaintiff. *See Kronos. Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (N.Y. 1993).

In its complaint plaintiff alleges that a contractual relationship existed between itself and a third party, namely, DEC and that defendants were aware of the relationship in question. Plaintiff further alleges that defendants intentionally interfered with its contract and that such interference was undertaken with malice and in bad faith toward plaintiff. The complaint also states that as a direct result of defendants' intentional and tortious interference DEC breached its contract with plaintiff and plaintiff suffered damages. Even though the complaint correctly states legal elements necessary to prevail on the merits of the tortious interference with contract

6

claim, it provides no factual support for the allegation that defendants intentionally procured the breach of plaintiff's contract with DEC.

It is well-settled that conclusory allegations merely stating the general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments will not be accepted as true. *See Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y. 1990); *see also Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988). Additionally, conclusory allegations or legal conclusions masquerading as factual conclusions will not prevent a court from granting a motion to dismiss. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions. *See First Nationwide Bank v. Gelt Funding Co.*, 27 F.3d 763, 771 (2d Cir. 1994).

In the present case, plaintiff's complaint provides no factual support for the allegation that defendants intentionally procured the breach of plaintiff's contract with DEC. Even though plaintiff need not include every evidentiary detail in its compliant, plaintiff must allege a factual predicate concrete enough to warrant further proceedings. Accordingly, defendants' motion to dismiss plaintiff's claim for tortious interference with contract must be granted. *See Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 449 (2d Dep't 1988) (holding that vague references in complaint to intentional course of conduct by engineering firm designed to induce county into terminating construction contract was insufficient to withstand motion to dismiss contractor's complaint against engineering firm for intentional interference with its contractual obligations to county); *Joel and Elec. Co. Prods., Inc. v. Joel*, 153 Misc.2d 549, 551 (Sup. Ct. 1992) (stating that conclusory allegations that defendant acted wrongfully,

7

knowingly, intentionally, maliciously and without reasonable justification or excuse were insufficient to plead cause of action for tortious interference with contract between plaintiff and third party); *M.J. & K. Co., Inc. v. Mathew Bender & Co., Inc.*, 220 A.D.2d 488, 490 (2d Dep't 1995) (plaintiffs' mere contentions that third parties cancelled contracts with them because of defendant's improper conduct, offered with no factual basis to support allegations, was insufficient to state cause of action for tortious interference with contractual relations).

### C.   Prima Facie Tort Claim

To sufficiently plead a cause of action for a prima facie tort, plaintiff must allege facts which show that (1) there has been an intentional infliction of harm; (2) which results in special damages; (3) without any excuse or justification; and (4) by an act which would otherwise be lawful.  *See Schulz v. Washington County*, 157 A.D.2d 948, 950 (3d Dep't 1990).

In its complaint plaintiff alleges that defendants acted with the intent of inflicting harm upon its business and that defendants' actions were without excuse or justification.  The complaint further states that, as a result of defendants' actions, plaintiff suffered special damages.  The complaint, however, fails to particularize the damages suffered by plaintiff as required for recovery on this particular claim.  *See John C. Supermarket, Inc. v. New York Prop. Ins. Underwriting Ass'n*, 60 A.D.2d 807, 807 (1st Dep't 1978).  Having realized that the complaint is deficient in this respect, plaintiff requests leave to amend the complaint to allege special damages.

Plaintiff correctly notes that Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given" and that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded

an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, courts will not grant leave to amend when the proposed amendment is legally deficient

and it would be futile to grant leave to amend. *See id*.

In the present case, allegation of special damages by plaintiff will not render plaintiff's

claim for prima facie tort legally sufficient.  This is so because plaintiff has failed to provide any

factual support for its allegations that defendants engaged in intentional infliction of harm. *See*

*Smith v. County of Livingston*, 69 A.D.2d 993, 994 (4th Dep't 1979) (noting that malice is an

essential element of a prima facie tort and that where the complaint fails to allege facts sufficient

to support a claim of malice or ill will, it is subject to dismissal); *John C. Supermarket, Inc.,* 607

A.D.2d at 807 (where plaintiff's complaint does not allege any facts to support a claim of malice

or ill will, the cause of action for prima facie tort must be dismissed).

Because plaintiff's complaint does not sufficiently state a claim for prima facie tort by

omitting factual support for allegations regarding intentional infliction of harm, there is no basis

to assert a claim for special damages.  Consequently, the Court views plaintiff's proposed

complaint in this regard as futile and denies the motion to amend.

### D.    Negligent Misrepresentation/Malpractice Claim

### 1.    Motion to Dismiss

Engineers, like other professionals, may be held liable for economic injury arising from a

negligent preparation of a report on the basis of negligent misrepresentation theory. *See*

*Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (N.Y.

1989).  However, "[b]efore a party may recover in tort for pecuniary loss sustained as a result of

another's negligent misrepresentation there must be a showing that there was either actual privity

of contract between the parties or a relationship so close as to approach that of privity."

*Prudential Ins. Co. v. Dewey*, 80 N.Y.2d 377, 382 (N.Y. 1992).

Plaintiff concedes that no actual privity of contract exists between defendants and itself. Accordingly, in order to prevail in the present case, plaintiff must demonstrate that its relationship with defendants "approaches that of privity." In order to satisfy the "functional equivalent of privity" test, plaintiff must allege that (1) defendants were aware that their reports/work product were to be used for a particular purpose or purposes; (2) plaintiff was a known party to defendants and relied on defendants' work product in furtherance of that purpose; and (3) defendants' conduct links them with plaintiff and evinces their understanding of plaintiff's reliance. *See Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551(N.Y. 1985).

With respect to the first prong of the "functional equivalent of privity test," plaintiff alleges in its complaint that defendants, in furtherance of their obligations under DEC contracts, and

> with awareness that its resulting work product, including designs and reports were to be used for the particular purpose of obtaining bids for and ultimately performing remediation of the [p]roject site, [defendants] prepared, compiled or approved some or all of the [c]ontract [d]ocuments for this [p]roject. Complaint ¶30.

With respect to the second prong of the "functional equivalent of privity test," the Plaintiff's complaint states as follows:

> In reliance upon the [c]ontract [d]ocuments and associated work product of [defendants], specifically known and identified bidders, including [plaintiff], in furtherance of the desired end result that the [p]roject site be remediated, prepared bids for the [p]roject. Complaint ¶31.

As concerns the third prong of the "functional equivalent of privity test," plaintiff's

10

complaint provides that

> [Defendants'] conduct, and the furtherance of its other and ongoing obligations under the [contracts with DEC], linked them to [plaintiff] and further evinced [defendants'] understanding of [plaintiff's] reliance upon the [c]ontract [d]ocuments.  Complaint ¶32.

All of the above-mentioned legal elements necessary to prevail on the merits of a negligent misrepresentation claim are fully supported by factual averments.  Viewing all of the legal and factual allegations in the complaint in the light most favorable to plaintiff, the Court concludes that plaintiff has sufficiently stated a cause of action for negligent misrepresentation/ malpractice.  Accordingly, defendants' motion to dismiss plaintiff's claim for negligent misrepresentation/malpractice must be denied

### 2.    Summary Judgment Motion

As stated above, in order to satisfy the "functional equivalent of privity" test, plaintiff must demonstrate  that (1) defendants were aware that their reports/work product were to be used for a particular purpose or purposes; (2) plaintiff was a known party to defendants and relied on defendants' work product in furtherance of that purpose; and (3) defendants' conduct links them with plaintiff and evinces their understanding of plaintiff's reliance.  *See Credit Alliance Corp.*, 65 N.Y.2d at 551.  After carefully considering the record in the present case, the Court concludes that a material issue of fact exists with respect to whether a relationship between plaintiff and defendant is equivalent to that of privity.

### a.    Awareness of Purpose

Plaintiff argues that defendants were aware that their work product, including designs and reports, was to be used for the purpose of soliciting bids for and achieving remediation of the project site.  In support of its argument, plaintiff cites to the language in the contract between

11

defendants and DEC, which provides in pertinent part that "the Engineer shall prepare plans and specifications for the purpose of competitively bidding the selected alternative in conformance with New York State laws, rules, regulations and guidelines."  Plaintiff also cites to the affidavit of David R. Hiss in which Mr. Hiss states that prior to submitting the bid, plaintiff was provided with plans and specifications prepared by defendants for purposes of assisting plaintiff in preparation of the bid.  Hiss Affidavit ¶6.  In their motion papers and accompanying affidavits, defendants do not dispute that they were fully aware that their work product was to be used for a particular purpose - soliciting bids from prospective contractors.  Accordingly, the Court concludes that the evidentiary record supports plaintiff's allegations that defendants were aware that one of the purposes of its work product was to assist contracting companies in preparing their bids for the project.  *Marcellus Constr. Co. v. Vill. of Broadalbin*, 302 A.D.2d 640, 641 (3d Dep't 2003) (where defendant's design of project was part of final bid package for all interested construction bidders, first prong of tripartite test has arguably been satisfied).

    **b.**    **Conduct Linking Parties**

In order to satisfy the "functional equivalent of privity" test, plaintiff must demonstrate existence of conduct that links defendant with plaintiff and evinces defendant's understanding of plaintiff's reliance on defendant's work product.  Factors utilized in demonstrating a requisite relationship between plaintiff and defendant depend not only on the number of contacts between the parties, but also on their substantive nature.  *See Parrot v. Coopers & Lybrand, L.L.P.*, 263 A.D.2d 316, 321(1st Dep't 2000).

For instance, in *Credit Alliance Corp. v. Arthur Andersen*, 65 N.Y.2d 536, 544 (N.Y. 1985), the court found that the requisite relationship existed where the parties remained in direct

12

communication with each other both orally and in writing and met together throughout the course of the relationship to discuss the purpose of the work product.  The court arrived at the same conclusion in *Cherry v. Joseph S. Herbert & Co.,* 212 A.D.2d 203, 208 (1st Dep't 1995), where there were personal meetings between plaintiffs and defendants, and assurances were communicated to plaintiffs by defendants.

After carefully reviewing the record, the Court concludes that the record demonstrates ongoing conduct linking defendants to plaintiff, as well as defendants' understanding of plaintiff's reliance upon defendants' work product.  Specifically, before plaintiff submitted its bid to DEC, the parties interacted as follows: (1) on September 27, 2000, plaintiff attended a mandatory pre-bid meeting and a site inspection guided by defendants; (2) on October 3, 2000, defendants sent Addendum No. 1 to plaintiff; (3) on October 4, 2000,  plaintiff attended a second pre-bid meeting and a site inspection guided by defendants; (4) on October 12, 2000, defendants sent Addendum No. 2 to plaintiff; and (5) defendants made direct inquiry of plaintiff regarding its bid.

Plaintiff's position is further strengthened by the fact that defendants' involvement with the project did not end with the preparation of the contract documents.  Rather, defendants remained involved in the project in a very direct and significant way for its full duration.  *See Northrup Contracting Inc. v. Vill. of Bergen*, 139 Misc.2d 435, 438 (Sup. Ct. 1986).

Based on this and other evidence in the record, the Court concludes that the parties' direct communications and personal meetings demonstrate existence of conduct sufficient to link defendants with plaintiff and evince defendants' understanding of plaintiff's reliance on their work product.

13

c.        **Reliance by a Known Party**

In order to satisfy the "functional equivalent of privity" test, plaintiff must demonstrate that defendant knew of plaintiff's identity and that plaintiff acted in reliance on defendant's work product.  Courts will not impose liability for negligent misrepresentation where an indeterminate and indefinite number of third parties may rely on a work product prepared by the defendant. *See Ultramares Corp. v. Touche*, 255 N.Y. 170, 183 (N.Y. 1931).  On the other hand, courts have been willing to impose liability upon defendants where, in the context of a particular transaction, the potential plaintiff or class of plaintiffs is fixed, definite, and identifiable.  *See Relaince Ins. Co. v. Morris Ass'n*, 200 A.D.2d 728, 729 (2nd Dep't 1994).

In its motion papers defendants argue that despite their knowledge that potential bidders would rely upon their work to prepare bids, the class of potential bidders did not constitute a known group possessed of vested rights, marked by a definable limit and made up of certain components.  According to defendants, bidders in the present case constituted an indeterminate class of persons who, presently or in the future, might act in reliance on defendants' work product.

In support of their argument, defendants rely primarily on the case of *Marcellus Const. Co., Inc. v. Vill. of Broadalbin*, 302 A.D.2d 640 (3d Dep't 2003).  In that case the plaintiff was awarded a contract for the construction of a sewage collection system.  The defendant engineer had been retained by the village to provide planning, design and construction phase engineering services.  The defendant engineer prepared the bid documents that included information on subsurface conditions.  Upon commencing work, plaintiff encountered subsurface conditions that it alleged varied from the descriptions in the "technical data" provided by the engineer, resulting

14

in alleged additional expense.  The plaintiff commenced an action against the defendant engineer

for negligent misrepresentation seeking to recover additional expenses but the court dismissed

plaintiff's claim stating as follows:

> [n]or do we consider plaintiff a "known party" merely because it was a potential
> bidder (citations omitted), or that [defendant] knew that plaintiff was "part of a
> definable class which would rely on the plans. (citations omitted).  Rather, we find
> plaintiff to be part of an "indeterminate class of persons who, presently or in the
> future might [act] in reliance on [defendant's plans] (citation omitted).

*Id.* at 641.  This Court agrees with the *Marcellus* court in that the mere fact that the plaintiff is a

potential bidder does not make the plaintiff a "known" party.  Unlike the record in *Marcellus*,

however, the record in the present case supports plaintiff's argument that defendants were aware

of plaintiff's identity prior to plaintiff's submission of its bid to DEC.  Specifically, the record

demonstrates that (1) defendants prepared documents recording the fact that, among other

bidders, plaintiff obtained copies of the contract documents for purposes of bidding on the

project; (2) defendants prepared documentation recording the fact that, among other bidders,

plaintiff attended two pre-bid site inspections and conferences; (3) before plaintiff submitted its

bid, defendants directly conveyed Addendum No. 1 and Addendum No. 2 to plaintiff.  In light of

this and other evidence in the record, the Court concludes that for purposes of satisfying the

"functional equivalent of privity test" plaintiff was a known party to defendants.

In order to withstand a motion for summary judgment on a negligent misrepresentation

claim, plaintiff must demonstrate not only that it was a known party to defendant, but also that it

reasonably relied on defendant's work product.  Defendants argue that in light of exculpatory

provisions contained in the contractual documents,  plaintiff cannot demonstrate reasonable

reliance on these documents in formulating its bid for the project.  Specifically, defendants cite

15

to the following segments of Article 13 of the Bidding Information and Requirements, entitled

Subsurface and Technical Information:

> Subsurface and technical information is made available to [b]idders in good faith so that they may be aware of the information utilized for design and estimating purposes. Department makes no representations or warranties express or implied, as to the completeness of this information or data, nor is such disclosure intended as a substitute for personal investigations, interpretations, and judgment of the [b]idder.

Defendants also cite Article 15 of the Bidding Information and Requirements, entitled

Examination of Bidding Documents and Site, which provides in relevant part that:

> Department, Engineer, or Design Engineer do not assume any responsibility for any conclusions or interpretations made by the [b]idder based on the information made available by the [b]idding [d]ocuments. Nor does Department, or Engineer assume any responsibility for any understanding reached or representation made concerning conditions which can affect the cost, schedule, progress, furnishing and performance of the [w]ork prior to execution of the [c]ontract, unless the understanding or representation is expressly stated in the [b]idding [d]ocuments.

Before addressing whether the above-cited contractual language would exculpate

defendants from a negligent misrepresentation claim, the Court notes that, as a general rule,

courts strictly construe exculpatory clauses against the drafter and do not enforce them beyond

their intended scope. *See Gross v. Sweet*, 49 N.Y.2d 102, 107 (N.Y. 1979). Moreover, as

pointed out by plaintiff in its opposition papers, the language in Article 13 applies to the

"Department" only, without reference to the "Engineer." Consequently, the Court cannot agree

with defendants in that Article 13 precludes plaintiff from asserting a claim for negligent

misrepresentation.

Unlike the language of Article 13, the language of Article 15 applies to both the

Department and the Engineer. Article 15, however, provides that the Department and the

Engineer are not liable for representations made in the bidding documents, "unless the

16

understanding and representation is expressly stated in the [b]idding [d]ocuments." Plaintiff maintains that defendants made express representations in the bidding documents and, therefore, cannot benefit from Article 15's exculpatory provisions. Specifically, plaintiff maintains that defendants made express representations throughout contractual documents, drawings, and addendums which turned out to be allegedly incorrect.

Also of interest is that Article 13 permits plaintiff to rely upon certain representations. Specifically, Article 13 states that:

> Bidders may rely upon the accuracy of all such technical data contained in such reports as to where (location) and when (exact time) such technical data was obtained, unless the [b]idding [d]ocuments limit any other basis upon which such technical data may be relied upon.

The same language appears in paragraph 3.4 of general conditions. Plaintiff submitted an affidavit of Andris Ledins, a licensed Engineer, stating that representations made by defendants in the contractual documents and relied upon by plaintiff were predominantly of technical nature.

In light of this and other evidence, the Court concludes that the record is ambiguous with respect to how the liability for representations contained in the contractual documents is to be apportioned between the contracting parties. *See Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176, 1183 (2d Cir. 1993) (stating that where provisions of contract are susceptible to conflicting constructions and when there is also relevant extrinsic evidence of parties' actual intent, meaning of provisions becomes an issue of fact barring summary judgment). Since a material issue of fact exists with respect to whether plaintiff could have reasonably relied on the representations contained in the contractual documents, the Court denies defendants' summary judgment motion seeking dismissal of plaintiff's negligent

misrepresentation claim.  For the same reason, the Court denies plaintiff's partial summary judgment motion asking the Court to conclude that, as a matter of law, functional equivalent of privity exists between plaintiff and defendants.

**E.      Other Arguments Submitted by Defendants in Support of Motion to Dismiss**

**1.      Complaint Should Be Dismissed as Premature**

In accordance with its contractual rights and remedies, plaintiff submitted change order requests for additional work and economic damages to DEC for consideration.  Defendants argue that since DEC has not yet finally resolved plaintiff's claims for additional work and economic damages, plaintiff has not yet suffered any real, identifiable damages for which it may be compensated by the instant suit.  Specifically, defendants argue that should plaintiff's change order requests be approved, it will have suffered no damages.  Furthermore, according to defendants, even if DEC denies some or all of plaintiff's change order requests, any attempt by plaintiff to specifically identify and quantify its alleged damages is wholly speculative pending DEC's final determination.  According to defendants, plaintiff's claims are not ripe for determination and as such are subject to dismissal.  In response, plaintiff argues that its claims cannot be considered premature based upon substantial damages incurred by plaintiff to date.

Ripeness is a "constitutional prerequisite to exercise of jurisdiction by federal courts." *Fed. Election Comm'n v. Cent. Long Island Tax Reform Comm'n*, 616 F.2d 45, 51 (2d Cir. 1980). The ripeness doctrine requires that there be a "real, substantial controversy between parties" involving a "dispute definite and concrete."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  These requirements are intended to prevent adjudication of issues that may never arise.  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Envtl.*

*Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996).  In analyzing the ripeness of a particular issue, a court must "consider both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration."  *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999).

Fitness analysis "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur."  *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1978).  In the present case, the issue of whether the plaintiff has suffered damages is not, as defendants claim, contingent on DEC's future determination with respect to the plaintiff's change order requests.  DEC's eventual determination or lack thereof will certainly have an effect on how much damages plaintiff may recover from defendants in this case.  However, it will have no impact in determining whether plaintiff has suffered damages in the first instance as a result of defendants' alleged negligent misrepresentation.

An argument similar to one advanced by defendants in the present case was rejected by the court in *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp.2d 363 (S.D.N.Y. 2004).  In *Seippel*, as a result of the defendants negligent advice, plaintiffs failed to pay appropriate federal and state taxes.  *See id.* at 371.  Plaintiffs sued defendants for negligent representation.  *See id.* Defendants argued that plaintiffs' claims were not ripe for adjudication by the federal district court because there had been no final resolution of plaintiffs' dispute with the IRS and state tax authorities.  *See id.*  The court found this argument unavailing.  According to the court, the fact that plaintiffs may not ultimately owe the tax authorities additional taxes did not mean that their action was not ripe for adjudication.  *See id.*  The court noted that plaintiffs alleged that they had been damaged, and continued to be damaged, as a result of defendants' conduct.  *See id.*

19

Plaintiffs' alleged damages included fees paid to defendants, losses incurred in the COBRA

transactions, expenses paid to accountants and attorneys that were assisting plaintiffs in

defending the audits, losses caused as a result of being forced to sell assets at distressed prices to

meet tax obligations, and tax penalties already assessed and paid. *See id.*  The court concluded

that these injuries were immediate and definite and, therefore, satisfied the "case or controversy"

requirement contained in Article III of the Constitution. *See id.*

Plaintiff in the present case also alleges that as a result of defendants' conduct, it has

been damaged and continues to suffer economic damages.  To substantiate its claim of continued

economic damages, plaintiff submitted an affidavit from its Vice-President, Arnon Garonzik.

The affidavit states that plaintiff's surety continues to perform the remainder of the work under

the DEC Contract.  The affidavit further states that as the result of its obligations to DEC,

plaintiff's surety had to pay for excess completion costs.  The plaintiff, in turn, was required to

reimburse the surety under its own indemnity obligations.  According to the affidavit, as of 2003,

plaintiff has repaid its surety $1,725,000 and anticipates being required to pay an additional

$2,000,000.[1]

In addition to monetary loss, plaintiff claims that it has suffered additional special

damages in the form of damages to reputation, lost bond capacity as well as impaired lending

and related credit relationships.  Viewing these allegations in a light most favorable to plaintiff,

the Court concludes that the injuries sustained by plaintiff are immediate and definite and,

therefore, satisfy the case or controversy requirement contained in Article III of the Constitution.

---

[1]Plaintiff submitted proposed amended complaint in which it asserts that it anticipates being required to reimburse its surety for the completion of the project in the amount of $3,275,000.

2.    **The Action is Subject to Dismissal as Duplicative of an Identical Pending Action in State Court**

Defendants seek dismissal of plaintiff's action or, alternatively, a stay of the action in favor of the state court proceedings.  Although these remedies are distinct, the requisite legal analysis for both is the same.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("a stay is as much a refusal to exercise federal jurisdiction as a dismissal").  The basic inquiry in either case is whether a federal court may decline to exercise jurisdiction over a case in favor of a parallel state court action.  *Id.* at 28.

a.    **Whether State and Federal Actions are Parallel**

The initial question is whether the federal and state court actions involving the parties to the instant cases are indeed parallel.  Federal and state court actions are parallel for purposes of abstention when the "proceedings are essentially the same; that, is there is an identity of parties, and the issues and relief sought are the same."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).  Even though the complete identity of the parties is not required, the parties must be at least substantially identical.  *See Bernstein v. Hosiery Mfr. Corp. of Morganton, Inc.*, 850 F. Supp. 176, 184 (E.D.N.Y. 1994); *see also Arkwright-Boston Mrfs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985)

The present case involves ECOR Solutions, Inc. as a plaintiff and Malcolm Pirnie, Inc. ("MPI") and David R. Hiss as defendants.  The action instituted in the Court of Claims involves ECOR Solutions, Inc. as a plaintiff and DEC as a defendant.  Since the defendants concede that DEC and MPI are not identical parties, the issue becomes whether DEC and MPI can be considered "substantially identical" parties for abstention purposes.  After reviewing the record,

the Court concludes that MPI and the DEC cannot be so considered.  Since MPI and DEC are

completely separate entities and there is no overlap of defendants in state and federal actions,

this Court finds that MPI and DEC are not substantially identical parties for purposes of

abstention doctrine.  *See Prisco v. State of New York*, 1992 WL 88165 (S.D.N.Y. 1992) (a suit is

not parallel where the plaintiffs in both actions are identical, but only the State is a defendant in

the Court of Claims, while many other defendants have been joined in the federal action);

*Sheerbonnet v. American Express Bank*, 17 F.3d 46, 50 (2d Cir. 1994) (a suit is not parallel

where the state and federal proceedings involve different parties).

    Furthermore, this Court concludes that the federal and state actions at issue here are not

"essentially the same" as required for purposes of abstention doctrine.  The actions are

duplicative where the claims asserted in them concern the same events and involve "sufficient

overlap of subject matter."  *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 365,

362 (2d Cir. 1985); *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) .

Indeed, even if the claims asserted in the two proceedings are not identical, if the state

proceeding would permit adjudication of the claims asserted in the federal proceeding, the

proceedings are parallel.  *See Telesco*, 765 F.2d at 362; *also see Accord Brillhart v. Excess Ins.

Co.*, 316 U.S. 491, 495 (1942) (if the claims raised in federal proceeding "could be satisfactorily

adjudicated in [the state] proceeding," abstention may be warranted).

    In the Court of Claims suit against DEC, plaintiff asserted claims for wrongful

termination and breach of contract.  In the present suit against MPI and David R. Hiss, plaintiff

asserted claims for negligent misrepresentation, tortious interference with contract, and prima

facie tort.  Though there may be some overlap of subject matter, this Court concludes that the

22

potential commonality is not sufficient to render the claims asserted by plaintiff in the state action against DEC substantially similar to claims asserted by plaintiff against MPI and David. H. Hiss in the present action. See *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (no substantial identity of issues where dispute in both in state and federal forums stemmed from same construction project but federal suit raised cause of action in tort that had no counterpart in state litigation).

This conclusion seems to be particularly appropriate considering that plaintiff could not have sued MPI and David R. Hiss in the Court of Claims. Plaintiff had no choice but to bring the proceeding against those defendants in a different forum. *See Prisco v. State of New York*, 1992 Wl 88165 (S.D.N.Y. 1992) (abstention is inappropriate where complaint in federal case stated causes of action under three federal statutes that were not present in the Court of Claims case, and particularly since those causes of action are not cognizable in the state courts). Accordingly, the Court finds that the state and federal actions in this case are not parallel.

**b. Whether Abstention is Appropriate**

Assuming *arguendo* that the federal and state actions were parallel, dismissal would still not be warranted, since there are three traditional categories of abstention. Specifically, abstention is appropriate (1) where there is a pending state criminal proceeding; (2) to avoid interference with attempts to establish coherent state policy on issues of peculiarly local concern; (3) to avoid unnecessary resolution of a constitutional issue that might be mooted by state law construction of state law. *See Younger v. Harris*, 401 U.S. 37, 43-54 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-34 (1943); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498-501 (1941).

In *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S 800, 817-18 (1976), the Supreme Court held that abstention may also be appropriate in cases that do not fall within the traditional categories mentioned above.  According to the Court, abstention in such cases rests on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817.  The Court noted, however, that:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which the District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the Duty of the District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* at 813, quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959).

To determine whether the abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). These factors are as follows:

(1) the assumption of jurisdiction by either court over any res or property;

(2) the inconvenience of the federal forum;

(3) the avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether state or federal law supplies the rule of decision; and

(6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.  *See Burnett*, 99 F.3d at 76.

*See Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996).  It is important that no

24

single factor is decisive and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses*, 460 U.S. at 16.

With respect to the first factor, Second Circuit Court of Appeals noted that absence of a res "points toward exercise of federal jurisdiction." *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989). Since the present action is not an in rem action and does not involve jurisdiction over property, the first factor weighs against the abstention. *See Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999).

As to the convenience of the forum factor, the Court finds that from the defendants' perspective, the geography factor is substantially neutral. According to the Second Circuit Court of Appeals, where the federal court is "just as convenient" as the state court, that factor favors retention of the case in the federal court. *See Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995), vacated on other grounds, 516 U.S. 801 (1995).

With regard to the chronological order in which the courts obtained jurisdiction, it has been emphasized that "priority should not be measured exclusively by which complaint has been filed first, but rather in terms of how much progress has been made in two actions." *Moses*, 460 U.S. at 21. In the present case, plaintiff filed complaints in both actions virtually simultaneously. In their motion papers defendants failed to address the issue of how much progress has been made with respect to plaintiff's action in the state court. Since defendants, rather than plaintiff, bear the burden of demonstrating existence of exceptional circumstances justifying surrender of federal court jurisdiction, the Court weighs this factor against abstention.

Defendants argue that allowing the federal action to go forward would result in piecemeal litigation and may produce conflicting results. The Court finds this argument

25

unavailing.  Supreme Court has held that "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816.  Furthermore, since plaintiff could not have sued MPI and David R. Hiss in the Court of Claims, defendants arguments regarding piecemeal litigation are unpersuasive.

The fifth factor in the exceptional circumstances test is whether state or federal law provides the rule of decision on the merits.  *See Moses*, 460 U.S. at 23.  In *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989), the Second Circuit stated that "[w]hen the applicable substantive law is federal, abstention is disfavored."  The same Court, however, also noted that although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or complex.  *See id.* at 308-309.  Since claims raised in the present suit do not present novel or unique issues of law, the fact that federal substantive law does not govern this case is of little weight.  *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)

In analyzing the sixth factor in the special circumstances test, federal courts are required to determine whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *Moses*, 460 U.S. at 28.  The Supreme Court has stated that "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."  *Id*.  Considering that plaintiff is not permitted to assert any claims against MPI and David R. Hiss, in the state action against DEC, the Court concludes that state court litigation does not adequately protect plaintiff's rights.

As explained above, the task of the district court under *Colorado River* "is not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, [the district court] must ascertain where there exists exceptional circumstances that justify the surrender of federal court jurisdiction." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999).  After analyzing the record in the context of the six *Colorado River* factors, this Court concludes that such "exceptional circumstances" do not exist in the present case.  Based thereupon, defendants' motion to dismiss plaintiff's case on abstention grounds must be denied.

### F.    Plaintiff's Motion to Amend

Plaintiff moves to amend its complaint as to assert direct contractual and tortious claims against MPI arising under the MPI/DEC contract.  Plaintiff argues that it may assert these additional claims based on principles of subrogation and assignment.  Defendants entered no opposition to plaintiff's motion to amend.

Federal Rule of Civil Procedure 15 provides that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  The decision to grant or deny leave to amend lies with in the sound discretion of the trial court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In deciding whether to grant plaintiff's leave to file an amended complaint, the court must evaluate such factors as: (1) whether amendment is proposed in good faith; (2) whether amendment would cause undue delay; (3) the extent to which amendment would prejudice the opposing party; (4) whether plaintiff has previously amended his complaint; and (5) futility of amendment.  *See Foman*, 371 U.S. at 182.  After examining the record in light of the above-mentioned factors, the Court finds that plaintiff's request for leave to serve an amended complaint so as to assert a new

27

cause of action against MPI should be denied.

New York law permits a surety who answers for the default of its principal to be subrogated to the rights of the obligee on whose behalf it completed the contract.  *See Menorah Nursing Home, Inc. v. Zukov*, 153 A.D.2d 13, 17 (2d Dep't 1989).  Furthermore, under New York law, upon answering for the default of its principal, a surety may be subrogated to any claims which the defaulting principal might have against third parties whose wrongful conduct allegedly constituted a cause of the default.  *See id.*

Plaintiff contends that these principles of law permit it to assert direct contractual and tortious claims against defendants.  Specifically, plaintiff's proposed amended complaint states that on April 10, 2002, DEC terminated plaintiff from its contract and demanded that plaintiff's surety complete the project pursuant to the terms of its performance bond.  In response to that demand, the surety undertook completion of the project, pursuant to a full reservation of rights, and as a result continues to incur costs and expenses in connection with the completion of the project.  Further, plaintiff claims that pursuant to principles of equitable subrogation, its surety acquired the alleged right of DEC to pursue any available claims against defendants, including a claim for negligent misrepresentation and breach of the DEC/MPI contract.  Plaintiff also claims that it was required to reimburse its surety for the costs, expenses, and damages incurred in completing the project on plaintiff's behalf.  Based thereupon, plaintiff's surety has now assigned its alleged right to pursue defendants to plaintiff and plaintiff contends it may exercise that right of subrogation to sue defendants directly herein.

The problem with plaintiff's argument is that its surety has no claims against defendants based upon principles of subrogation.  It is true that in the context of a performance bond like the

one in this case, a surety, upon payment of its principal's default, is entitled to be subrogated to the rights of the owner-obligee whom it has paid.  *See Menorah Nursing Home, Inc.*, 153 A.D.2d at 17.  And it is also true that upon answering for the default of its principle, a surety may be subrogated to any claims which the defaulting principle might have had against third parties whose wrongful conduct allegedly caused the default.  *See id.*  Thus, in the present case, plaintiff's surety would be subrogated to all the rights and remedies which were available to DEC against plaintiff for the enforcement of plaintiff's obligation.  Plaintiff's surety would also be subrogated to all of the rights and remedies plaintiff, its principal, had against any third parties liable for causing its default.  The Court, however, finds no legal support for plaintiff's leapfrog-like proposition that upon payment of plaintiff's contractual obligation to DEC, its surety now has a right of subrogation to all the rights and remedies which were available to DEC against third parties such as defendants.  A surety can only step into the shoes of either its principle or the obligee's shoes insofar as asserting claims related to its principle's default.  It cannot, as plaintiff suggests, step into a better pair of shoes.  Notably, if plaintiff could obtain a direct right to sue defendants via assignment of subrogation rights by its surety, it would not need to resort to the complications of establishing the functional equivalent of privity with defendants.  Because plaintiff's proposed amendment based upon principles of subrogation plainly lacks merit,  plaintiff's cross-motion to amend the complaint must be denied.

**IV.    CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that motions by defendants to dismiss plaintiff's negligent misrepresentation claim pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56 are DENIED; and it is further

ORDERED that plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56, with respect to plaintiff's negligent misrepresentation/malpractice claim is DENIED; and it is further

ORDERED that defendants' motions to dismiss plaintiff's tortious interference with contract and prima facie tort claims are GRANTED; and it is further

ORDERED that plaintiff's cross-motion to amend the complaint is DENIED.

IT IS SO ORDERED.

Dated: July 29, 2005
      Syracuse, New York

Norman A. Mordue
U.S. District Judge

30