**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ECOR SOLUTIONS, INC. formerly known
as ERM C&O Services, Inc.,

                         Plaintiff,           No. 02-CV-1103
                                           (GTE/DRH)
    v.

MALCOLM PIRNIE, INC.,

                        Defendant.

---

**APPEARANCES:**                            **OF COUNSEL:**

ERNSTROM & DRESTE, LLP              JOHN W. DRESTE, ESQ.
Attorney for Plaintiff
180 Canal View Boulevard
Suite 600
Rochester, New York 14623

MILBER MAKRIS PLOUSADIS         MARK SEIDEN, ESQ.
    & SEIDEN, LLP
Attorney for Defendant
Suite 402
1000 Woodbury Road
Woodbury, New York 11797

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

---

[1] In this circuit, motions to compel arbitration are treated as dispositive motions which may be referred to a magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  See, e.g., DuBois v. Macy's East Inc., No. 06-CV-6522 (NGG)(LB). 2007 WL 4224781 (E.D.N.Y. Nov. 27, 2007); Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429 (N.D.N.Y. 2007); Najib v. Arnold, No. 03 Civ. 3010(CBM), 2005 WL 221428 (S.D.N.Y. Jan. 31, 2005); Lockport Mem. Hosp. v. United Professional Nurses, No. 02-CV-0770(SR), 2004 WL 1445722 (W.D.N.Y. June 25, 2004); see also Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1.

Plaintiff ECOR Solutions Inc. ("ECOR"), brings this action against defendant, Malcolm Pirnie, Inc. ("MPI") alleging negligent misrepresentation, malpractice, and tortious interference.  Am. Compl. (Docket No. 53).  Presently pending is ECOR's motion to compel arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  Docket No. 84.  MPI opposes the motion.  Docket Nos. 85, 86.  For the following reasons, ECOR's motion is granted.

## I. Background

MPI, an engineering firm located in Albany County, New York, was retained by the New York State Department of Environmental Conservation (DEC) to provide plans for and oversee a construction project located near Coxsackie, Greene County, New York.  MPI prepared such plans and on January 9, 2001, following a bidding process, DEC awarded ECOR, principally located in West Chester, Pennsylvania, the contract for construction of the project.   Performance of that contract gave rise to disputes between ECOR and MPI which led to the initiation of this action by ECOR.  See generally Am. Compl. (Docket No. 53) at ¶¶ 1-30; Ans. (Docket No. 55).

After a prolonged period of discovery and motion practice, the case was scheduled to commence trial on October 6, 2008.  Docket Nos. 69, 72.  On August 29, 2008, the parties entered into a confidential agreement for the binding arbitration of their dispute.  Arbitration Agreement (Docket No. 84-4).  The parties then submitted a second agreement to the district court that the remaining issues be submitted to binding arbitration, which the district court so ordered on September 24, 2008.  Docket No. 80 ("Arbitration Order").  The Order provided that:

> [(1)] the parties desire[d] that all remaining issues in th[e] existing controversy, which arise out of contract or other transactions associated with the facts and events set for within such Action, which involve commerce as defined in the [FAA] shall be settled by arbitration; . . . [(2)] the parties have additionally and separately agreed, in confidence, to the scope and other parameters of the arbitration; and . . . [(3) the] claims set forth in Counts II and III of the Action . . . shall be voluntarily dismissed with prejudice . . . [resulting in an] irrevocabl[e] agree[ment] that the remainder of the existing controversy arising out of the contract, facts, and other underlying circumstances as set forth in the Action shall be submitted to binding arbitration . . . the scope and extent of [which] . . . shall be as separately agreed-upon by the parties . . . [and] shall be subject to, and governed by, the [FAA].

Id.  This action was then closed "due to the parties agreement to participate in binding arbitration."  Docket No. 81.

The arbitration proceeding was scheduled to commence on Monday, December 8, 2008 and the parties arranged for a panel of three arbitrators, scheduled witnesses, and prepared for the hearing.  Dreste Aff. (Docket No. 84-2) at ¶ 10.  On Friday, December 5, 2008, MPI advised that it refused to proceed with the arbitration hearing because of ambiguities in the Arbitration Agreement.  Seiden Aff. (Docket No. 85).  This motion followed.

## II.  Discussion

ECOR moves to compel arbitration on the grounds that the Arbitration Agreement and Order (1) expressed the parties' agreement to arbitrate and (2) included the issues which MPI now asserts must be decided before an arbitration hearing.  MPI contends that the Arbitration Agreement did not delegate to the arbitration panel the power to decide any issues other than the special interrogatories to which the parties agreed.

3

Under the FAA, parties may agree in writing to arbitrate "an existing controversy arising out of [a contract involving commercial transactions and it] . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law . . . for the revocation of any contract." 9 U.S.C. § 2. In instances where "[a] party [is] aggrieved by the . . . refusal of another to arbitrate [pursuant to an] . . . agreement . . . . [the aggrieved party] may petition any United States district court which . . . would have jurisdiction . . . for an order . . . [compelling] arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4.

The FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts." Volt Information Sciences, Inc. v. Board or Trustees of Leland Stanford Junior, 489 U.S. 468, 474 (1989) (internal quotations and citations omitted). Thus, when interpreting an arbitration agreement which falls within the scope of the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in the favor of arbitration." Volt, 489 U.S. at 475-76; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."); Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including when] the problem at hand is the construction of the contract language itself . . . . ").

"[T]he applicability of an arbitration agreement is not within the discretion of the

4

district court, [r]ather, a district court must direct parties to arbitrate all issues that fall within the scope of their arbitration agreement." Cleary v. Albany County Sheriff's Dep't, No. 08-CV-349 (LEK/DRH), 2008 WL 5340994, at *1 (N.D.N.Y. Dec. 19, 2008) (quoting E.E.O.C. v. Rappaport, Hertz, Cerson & Rosenthal, P.C., 273 F. Supp. 2d 260, 264 (E.D.N.Y. 2003) (quoting WorldCrisa Corp v. Armstrong, 129 F. 3d 71, 74 (2d Cir. 1997) (internal quotations and citations omitted))). Therefore, "the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004) (quoting Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir.2003) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996)).

There exists no dispute here that the parties entered into an arbitration agreement or that MPI has refused to participate in the arbitration. Thus, the question presented is whether the Arbitration Agreement and Order encompass within their scope the issues now raised by MPI. Since "[a]rbitration is entirely a creature of contract," parties cannot be forced to arbitrate and "[t]he rules governing arbitration, its location, the law the arbitrators will apply, indeed, even which disputes are subject to arbitration, are determined entirely by [the] agreement between the parties." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F. 3d 100, 104 (2d Cir. 2006); see also Volt, 489 U.S. at 478 ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure arbitration agreements as they see fit."); Mitsubishi, 473 U.S. at 628 (discussing a party's ability to tailor the arbitration agreement to its needs by negotiating which issues are to be decided by an arbitrator); S.A. Mineracao Da Trindade-Samitri v. Utah Intern.,

Inc., 745 F.2d 190, 193-94 (2d Cir. 1984) ("The scope of an arbitration clause, like any contract provision, is a question of the intent of the parties.")[2]; Actus Lend Lease LLC v. Integrated Bldg. Resources Dev'l LLC, No. 07-CV-459 (TJM), 2007 WL 2362389, at *3 (N.D.N.Y. Aug. 14, 2007).

Here, the parties signed two agreements memorializing their intent to arbitrate pursuant to the FAA which were so ordered by the Court. The parties' agreements were entered on the eve of their scheduled trial and operated to terminate that trial in favor of the arbitration hearing. Docket Nos. 77-81. Thus, any questions of consent and intent to arbitrate are clearly resolved in favor of ECOR and arbitration. Moreover, the explicit language of the Arbitration Agreement states that the arbitration will encompass "all remaining issues in th[e] existing controversy" and "the issues of negligent misrepresentation and associated proximate causation . . . alleged in Count I . . .." Docket No. 84-4 §2(1)(c). The Agreement also precludes the arbitration panel from learning the details of, or deciding the specifics surrounding, any amount of damages to be awarded in the event the arbitrators determined there was liability. Id. §2(1)(n). Thus, the clear language of these agreements authorizes the arbitrators to resolve all disputes surrounding Count I except damages.

MPI contends that the authority of the arbitrators was limited by the agreements to

---

[2] "In certain limited circumstances, courts assume the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452 (2003). "These . . . typically involve matters . . . such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Id. (citations omitted). This narrow exception does not include "what kind of arbitration proceeding the parties agreed to . . . [as a]rbitrators are well situated to answer . . . question[s pertaining to contract interpretation and arbitration procedures." Id. (citations omitted).

answering special interrogatories but not all remaining issues in the case. First, MPI relies for support upon a case in which the Supreme Court clearly stated that when construing arbitration documents, they "should be read [together] to give effect to all [the] provisions and to render them consistent with each other." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995) (citations omitted). Thus, when a party's interpretation "sets up . . . two clauses in conflict with one another: one foreclosing [arbitration], the other allowing [it, the] interpretation is untenable." Id. at 64. This precisely describes MPI's contention here where it asks the Court to consider limited portions of the agreements. Any provisions in the agreements referencing special interrogatories, facts to be proven, or facts to be agreed upon, serve to provide guidance for the parties rather than limitations on the arbitrators. The arbitrators were given the task of resolving the pending litigation other than damages.

Second, "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. [Additionally, d]oubts should be resolved in favor of coverage." WorldCrisa Corp., 129 F. 3d at 74. Language such as that contained in the agreements at issue that "all remaining issues in this existing controversy, which arise out of the contract or other transactions associated with the facts and events set forth within [the Complaint] . . . shall be settled by arbitration" constitutes the broadest language possible. See Trafalgar Power, Inc. v. Aetna Life Ins. Co., Nos. 99-CV-1238, 00-CV-1246, 2001 WL 640908, at *2 (N.D.N.Y. May 23, 2001) ("[L]anguage [that "any dispute arising out of or relating to" the agreement] is undoubtedly broad and creates a presumption of arbitrability.") (citing Oldroyd v. Elmira

7

Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (holding that using language such as "[a]ny dispute, controversy or claim arising under or in connection with [Oldroyd's employment agreement]," within an arbitration agreement is "the prototypical broad arbitration provision" and thus, establishes a presumption of arbitrability).  Therefore, there exists here a presumption from the broad language of the agreements that the parties intended that all remaining issues except damages be decided by arbitration and there have been no allegations, nor any indications in the parties' submissions that the issues raised by MPI are not within the scope of the arbitration agreements.

Third, even in the absence of the presumption, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them."  Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (citations omitted).  Here, MPI's concerns that it may be required to answer allegedly irrelevant inquiries clearly falls within the scope of the parties' agreements.  Essentially, MPI's concerns focus on the relevance of evidence to be admitted at the hearing.  Both the confidentiality agreement and arbitration agreements contemplate the resolution of all issues remaining in the litigation.  The relevance of evidence to be admitted at the hearing was clearly contemplated in the agreements.

Finally, the timing and context in which MPI raises the present issues further supports EDOR's motion.  The arbitration agreements were entered by the parties in the weeks leading up to their trial in the district court on the date certain of October 6, 2008.  The trial would, of course, have resolved all remaining issues, including those raised now by MPI.  As a result of the arbitration agreements, the trial was canceled and this case

was terminated in this Court's docket.  No reason appears why either the parties or the Court would have agreed to arbitration as an alternative to trial at that late stage unless the arbitration would resolve all the issues that would have been resolved at trial. Thus, MPI's argument that issues remain for resolution by the Court defies reason and common sense.  Moreover, MPI raised the issues and refused to arbitrate only on the last business day before the scheduled arbitration hearing at substantial inconvenience and expense to both ECOR and the arbitrators.  MPI's timing was, therefore, at best unfortunate and at worst bad faith.

Accordingly, for the foregoing reasons, ECOR's motion to compel arbitration should be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that ECOR's motion to compel arbitration (Docket No. 84) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATE: January 21, 2009
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge